

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
IN RE: HOLOCAUST VICTIM ASSETS
LITIGATION

Case No. CV 96-4849 (ERK)(MDG)
(Consolidated with CV 96-5161
and CV 97-461)

MEMORANDUM & ORDER

This Document Relates to: All Cases

------------------------------------------------------------ X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ July 1 2008 ★
BROOKLYN OFFICE

## MEMORANDUM & ORDER APPROVING SET 168: 10 AWARD AMENDMENTS CERTIFIED BY THE CLAIMS RESOLUTION TRIBUNAL PURSUANT TO ARTICLE 31(2) OF THE RULES GOVERNING THE CLAIMS RESOLUTION PROCESS AND AUTHORIZING PAYMENT FROM THE SETTLEMENT FUND

KORMAN, J.:

Late last year it became apparent that one of the two Settlement Defendants, *Credit Suisse*, would provide a significant amount of specific additional account information that had neither been recorded by the ICEP auditors nor had previously been disclosed in the course of so-called "voluntary assistance." Such voluntary assistance is an integral part of the banks' pledge to cooperate with the implementation of the Settlement Agreement, and I have noted that "This is a pledge that reflects their legal obligation. It is one to which I intend to hold them."[1] A definition of what may be understood by voluntary assistance is contained in the Memorandum to the File dated August 9, 2000, paragraph B.3,[2] and is further embedded in Art. 6 of the Rules Governing the Claims Resolution Process (as amended), which states that

> [w]hen necessary to obtain information to resolve claims to Accounts that is unavailable to the CRT under Articles 1-5, the CRT may seek the voluntary assistance of banks that may have information in their files to such an Account.

---

[1] See *In re Holocaust Victim Assets Litig.*, 105 F.Supp.2d 139, (E.D.N.Y. 2000), citing the Memorandum to the File, dated August 9, 2000, Exhibit I to Plan of Allocation.

[2] *Id.*

1

The CRT accordingly has sought voluntary assistance relating to hundreds of claimed accounts and has received regular input from one of the defendant banks for several years. But until 2007 little had been achieved in several years of ongoing discussion between the CRT and *Credit Suisse* about the need for voluntary assistance for a large and growing number of cases. In 2007, however, after the CRT had submitted an updated list of accounts for which it had requested additional information, the tenor of the discussions became more promising. Finally, in November 2007, the CRT received additional documentation for a priority list of 29 yet to be awarded Custody accounts.[3] This additional information proved to contain not only information about the identity of the account owner, but also detailed documentation on the portfolios held in these 29 accounts as well as their disposition history. The significance of this documentation for the account award process is self-evident. In view of the importance of the additional information found in this sample, and the emphasis this Court has placed on restoring to account owners or their heirs the proper value of the assets they had been deprived of, it was deemed only appropriate that the CRT would, even at this late stage in the process, revisit claims that had been considered closed following the award of the accounts in question.

The CRT thus pressed for the delivery of additional information for a list of 322 Custody accounts (with the 29 accounts for which information had been provided, the CRT's request list thus totaled 351 accounts), which consisted largely of already awarded accounts, most of which, in the absence of any information on their content, had been awarded at presumptive value. *Credit Suisse* eventually provided documentation containing new information for 257 of the requested 322 Custody accounts, part of which was received in February 2008, while the bulk of it came in April.

The CRT has since begun revisiting the previously awarded custody accounts for which new information is available. The CRT now recommends the adjustment of 10 awards previously

---

[3] Some of these accounts have been treated in the meantime.

approved by the Court prior to the receipt of this additional information. Additional amendments will be forthcoming as the CRT's analysis of the records proceeds.

The 10 Award Amendments are listed in Annex A to this Order. This Court's approval of the resources to pay for increases in the award amount for these Award Amendments is sought. The total amount of these 10 Award Amendments is US $18,884,785.03 (SF 19,262,480.73 converted at a rate of 1.02 Swiss Francs per U.S. Dollar).

If the Court approves this one hundred and sixty-eighth set, a total of US $488,739,022.79 will have been awarded thus far. This total amount is comprised of Awards issued under CRT I and CRT II combined, and Plausible Undocumented Awards (PUAs). Under CRT I alone, which took place from 1997 through 2000, 207 accounts, with a value of US $18,184,492.00, were awarded as accounts that had belonged to Victims of Nazi Persecution. Under CRT II alone, 2,650 Awards for 4,207 accounts totaling US $409,586,321.87[4] will have been made to date to Victims or Targets of Nazi Persecution making up the Deposited Assets Class. The total number of PUAs issued to date is 12,360 less 173 full and partial deductions totaling $60,968,208.92.

As set forth in the Award Amendments and as required by Article 31(3) of the Rules, the Certified Award Amendments shall be paid in full by the Special Masters after approval of such Award Amendments by the Court.

Therefore, it is hereby

ORDERED that the attached 10 Award Amendments are hereby approved pursuant to Article 31(2) of the Rules; and

ORDERED that for the payment of these 10 Award Amendments certified by the CRT and hereby approved by the Court, the Signatories of the Settlement Fund are hereby directed to

---

[4] This amount includes the payments of decisions on appeal issued by Special Masters Michael Bradfield and Helen Junz totaling US $4,655,653.71.

immediately transfer US $18,884,785.03 from the Settlement Fund to the Swiss Banks Settlement-Dormant Accounts-Payment Account.

It is further ORDERED that the Special Masters shall provide the Court with the name and address of every class member receiving an Award Amendment, which information shall be filed with the Court under seal.

I will issue additional orders approving Awards and Award Amendments certified by the CRT and transferring further sums from the Settlement Fund as the CRT certifies them to this Court.

Dated: Brooklyn, New York
June 30, 2008

SO ORDERED:

s/Edward R. Korman
_____
Edward R. Korman
United States District Judge

4

# CLAIMS RESOLUTION TRIBUNAL

*[BATCH CLXVIII] - ANNEX A*

Pursuant to Article 16 of the Rules Governing the Claims Resolution Tribunal, as amended, (the "Rules"), the Claims Resolution Tribunal hereby certifies as of June 30, 2008 the following Award Amendments for approval by the Court and payment by the Special Masters:

| | Account Owner Last Name and Claim Number | Award Amendment Amount (SFr.) |
|---|---|---:|
| 1. | Bandler, Max 200065/HS; 500374/HS | 1,017,953.75 |
| 2. | Eichengrün, Sally 203957/MBC | 1,724,000.00 |
| 3. | Friede, Max 201177/CU; 214959/CU | 473,000.00 |
| 4. | Fuchs, Carl 221703/RS | 3,119,150.00 |
| 5. | Hartmann, Hanna 601563/MBC | 263,564.38 |
| 6. | Hirschfeld, Elisabeth 201078/WT | 580,365.87 |
| 7. | Löwbeer, Wilhelm 300182/CU | 4,586,473.10 |
| 8. | Löwenthal, Eduard 400977/DE; 401031/DE | 4,110,511.63 |
| 9. | Roubitschek, Rudolf 213410/CU | 240,235.25 |
| 10. | Winter, Josefine 224228/RS | 3,147,226.75 |
| | **Total Award Amendment in Swiss Francs** | **19,262,480.73** |
| | **Total Award Amendment in U.S. Dollars[5]** | **18,884,785.03** |

---

[5] Exchange rate as of 30 June 2008 of 1.02 Swiss Francs per U.S. Dollar.