UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                              :
IN RE:                                                        :   Case No. CV 96-4849 (ERK)(MDG)
HOLOCAUST VICTIM ASSETS                                       :   (Consolidated with CV 96-5161
LITIGATION                                                    :   and CV 97-461)
                                                              :
------------------------------------------------------------  :   **MEMORANDUM & ORDER**
                                                              :
This Document Relates to: All Cases                           :
                                                              :
                                                              :
------------------------------------------------------------ X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 2 3 2011 ★
BROOKLYN OFFICE

KORMAN, Chief Judge.

Special Master Michael Bradfield has submitted to me a copy of his letter of January 25, 2011 to Mr. Roland Roth (the "January Letter"), counsel to Mr. Michael Fleischmann ("Appellant"). Special Master Bradfield's letter concerns Appellant's appeal of the denial by the CRT of Appellant's claim to three accounts that he asserts his father, mother and aunts established in a Swiss bank during the Relevant Period for claims covered by the Swiss Bank Settlement. Based on a careful analysis of the information submitted on appeal by Appellant, the January Letter concluded that Appellant was subject to Article 30(3) of the CRT Governing Rules, which requires that "appeals submitted without a plausible suggestion of error shall be summarily denied," and that therefore Appellant's appeal is not eligible for further consideration. In a letter dated February 23, 2011, Mr. Roth challenges this conclusion and requests a hearing by the Court.

No Swiss bank information available to the CRT discloses the existence of an account in a Swiss bank held by Appellant's relatives. Instead, Appellant's claim that his

relatives had accounts in a Swiss bank during the Relevant Period is based almost exclusively on a penciled note written on scrap paper. The note, which Appellant states his father gave him in 1944 prior to the arrest and subsequent murder of Appellant's parents by Hungarian fascists, contains a list of very valuable monetary assets that Appellant claims were deposited in a Swiss bank. Special Master Bradfield sought to determine whether the note and the surrounding circumstances of the note provided a basis for determining that it was plausible that an error had been made in the original denial decision. Such a determination would authorize proceeding to consideration of an award based on the note.

The January Letter described extensive and comprehensive efforts undertaken by Special Master Bradfield to authenticate the note. These efforts were inconclusive, as Special Master Bradfield determined, based on expert opinions, that it was not possible to accurately identify whether the note was written during the Relevant Period or in the post-War period. Special Master Bradfield made additional efforts to substantiate the existence of the claimed accounts, but found, as recorded in the January Letter, no indications of other factors that would have provided support for the existence of the claimed Swiss bank deposits. In particular, there was no indication that, as claimed by Appellant, his family possessed pre-Holocaust wealth commensurate with the amount of monetary assets identified in the note, and there was no credible information available despite diligent inquiries establishing that Appellant's father was a participant in the Hungarian wine industry, as claimed by Appellant, which, if true could have added substance and credibility to the existence of the claimed deposits. Based mainly on these considerations, Special Master Bradfield concluded that Appellant's appeal had not

provided evidence of plausible error in the original CRT denial and that Appellant's appeal is not eligible for further consideration.

I further note that, even if Special Master Bradfield had determined that the note was authentic, that the Appellant's family's pre-Holocaust wealth was commensurate with the amount of monetary assets identified in the note, and that the Appellant's father was a participant in the Hungarian wine industry, this note in itself is insufficient to justify an award. As detailed in a Certified Denial approved by this Court on 30 December 2004, according to Article 17 of the Rules, the CRT uses the records and files available from the Account History Database, the Account Dossiers, and the Total Accounts Database, the information submitted by the Claimants, and to the extent that the CRT deems relevant, other sources of information to determine whether an award is justified. While this Court has previously approved awards to claimants when the ICEP Investigation failed to locate an account belonging to their relative (an account not included in the Account History Database, the Account Dossiers, and the Total Accounts Database), the evidence submitted by these claimants falls into very limited categories. Article 17 of the Rules lists certain categories of evidence that the CRT has used to justify an award when an account is not identified in the ICEP Investigation. These categories include Austrian State Archives Records and other government records, records of the New York State Holocaust Claims Processing Office, and any other historical and factual material available to the CRT. Examples of facially reliable evidence submitted by claimants include actual bank documents, documents submitted to an official governmental agency, and official letterhead indicating a connection to a Swiss bank. While this Court bears in mind the difficulties of providing a claim after the

destruction of the Second World War, in this case, because the note provided by the Appellant does not fall into any of the categories discussed above, nor does it indicate an official connection to the bank at issue, it is insufficient to support the existence of bank accounts, particularly in the amounts claimed.[1] The note, even if authentic, remains an assertion by the Appellant's father regarding the existence of Swiss bank accounts, for which no collaborating evidence has been found.

In an Order dated February 17, 2006, I recognized that the destruction of documents by Swiss banks means that, for many thousands of claimants, like the Appellant in this case, no documents remain to prove their entitlement to a Holocaust-era Swiss bank account. I therefore ordered that all claims be analyzed to determine whether an award should be recommended even in the absence of bank records or other documentation proving the existence of an account. Upon my request, the Appellant's claim was re-reviewed during the appeals process. The Appellant's claim was analyzed and determined to contain sufficient information to warrant a Plausible Undocumented Award ("PUA"). These awards are designed for cases such as the Appellant's, in which no documents remain that shows the existence of a Holocaust-era Swiss bank account. On the basis of the information the Appellant provided about his family's circumstances during the War, he is entitled to receive a total payment of US $7,250.00 for this PUA.

---

[1] For other cases in which documents submitted by claimants were deemed to be insufficient to support the existence of a Holocaust-era Swiss bank account, see, e.g., *In re Account of Emil Weiss* (approved on 17 September 2010); *In re Account of Walter Kary* (approved on 30 May 2007; Denial upon Request for Reconsideration approved on 17 September 2010); *In re Account of Italo and Fausto Levy* (approved on 17 September 2010); *In re Account of Osias Rupp* (approved on 21 September 2005); and *In re Account of Karass (Cementia Holding AG)* (approved on 30 August 2010).

Pursuant to Fed. R. Civ. P. Rule 53 ("Special Masters") and in accordance with class action principles as well as my discretionary authority to supervise the administration of the Swiss bank Settlement Agreement and the Plan of Allocation and Distribution of Settlement Proceeds, I have authorized Special Master Bradfield to act on the Court's behalf in analyzing Deposited Assets Class appeals. Special Master Bradfield consults with me directly in connection with particular appeals, and also seeks my approval of policy determinations affecting the appeals process as a whole.

In view of the Court's and Special Master Michael Bradfield's careful examination of the appeal submitted by Roland Roth on behalf of Appellant, it is hereby determined that no further proceeding in this Court are required with respect to Appellant's appeal, and

ORDERED that the basis for the denial of Appellant's appeal, as explained in Special Master Bradfield's letter to Mr. Roth of January 25, 2011, is confirmed.

ORDERED that the Appellant's Plausible Undocumented Award be processed and submitted to this Court for approval and subsequent payment.

Brooklyn, New York

Dated: March 22, 2011

SO ORDERED:

s/Edward R. Korman

Edward R. Korman
United States District Judge