UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

IN RE: HOLOCAUST VICTIM ASSETS
LITIGATION

-------------------------------------------------------------

This Document Relates to: All Cases

------------------------------------------------------------- X

Case No. CV 96-4849 (ERK)(MDG)
(Consolidated with CV 96-5161
and CV 97-461)

**MEMORANDUM AND ORDER**



KORMAN, J.:

  At my request, Special Master Helen B. Junz has analyzed the Appeal that has been filed against the Award Decision *In re Arthur Freund* which was authorized pursuant to the Insurance Guidelines and in accordance with my subsequent Orders, including my Order dated 27 October 2006.  In her letter of 10 November 2011, Special Master Junz set forth her analysis and recommendations on the Appeal filed *In re Arthur Freund*.

  In her letter of 10 November 2011, Special Master Junz finds that the Appellant did not provide a sufficient basis to justify adoption of his main contentions.  Special Master Junz however did find that the CRT's valuation of the insurance policy in question was in part in error and accordingly recommends an additional payment to the Appellant.  Special Master Junz is hereby requesting the Court's approval of her recommendations regarding the Appeal *In re Arthur Freund*.

  Special Master Junz' letter of 10 November 2011 provides an extensive analysis of the issues raised in the Appeal and explains the basis for her recommendations in detail.  The 10 November 2011 letter is attached hereto and incorporated herein.

In view of Special Master Junz' thorough examination of the record before the CRT and detailed explanation of her recommendations, it is hereby

ORDERED that the recommendations set forth in the 10 November 2011 letter concerning the *Arthur Freund* Appeal are adopted in their entirety and the Appeal is hereby closed;

ORDERED that payment of US$ 3,276.02 be made to the Appellant identified to the Court by the Special Master;

ORDERED that for this payment the Signatories of the Settlement Fund are hereby directed to transfer immediately US$ 3,276.02 to the Swiss Banks Settlement-Dormant Accounts-Payment account;

ORDERED that the referenced Appeal Decision is hereby approved for release to the Appellant.

It is further ordered that the Special Master shall provide the Court with the name and address of the Appellant receiving this Appeal Decision which information shall be filed with the Court under seal.

Dated:   Brooklyn, New York
         November 16, 2011

SO ORDERED:

s/Edward R. Korman
_____
Edward R. Korman
United States District Judge

Helen B. Junz
Special Master
Holocaust Victim Assets Litigation
Case No. CV 96-4849
P.O. Box 9564
8036 Zurich
Switzerland

November 10, 2011

The Honorable Edward R. Korman
United States District Judge
United States District Court
 for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Korman:

At your request I have reviewed the Appeal filed by the Appellant against the Award Decision, approved by the Court on 27 December 2006, regarding his claim to a looted life insurance policy held by his father Arthur Freund (*In re Arthur Freund*). The CRT informed the Appellant in a letter, dated 30 January 2007, that the Court had approved the CRT's recommendation that the Appellant be awarded the amount of US$ 10,784.38 in payment of his claim to the insurance policy issued to his father, Arthur Freund, by the Berlin branch of a Swiss Non-participating Insurance Company ("the *Insurance Company*")

**Summary of the Award decision**

The award was based on archival documentation provided by the Appellant. This documentation consisted of

> 1) a registration form filed by the *Insurance Company* on 9 July 1940 with the Central Finance Office (*Zentralfinanzamt*) in Berlin, which certified that Arthur Freund, who resided in enemy territory, namely in Tel Aviv, Palestine, held a life insurance policy numbered 241444 with them. The face value of this policy was 4,828.00 German Goldmark ("GM") (payable in dollars) and the actual (cash surrender) value was RM 2,864.45.

and  2) two documents relating to the question whether Arthur Freund's *Insurance Company* policy was subject to the Nazi Ordinance regarding confiscation of such Jewish-owned policies. The first document is a letter from the *Insurance Company* to the head of the Gestapo, dated 22 February 1943, inquiring whether the confiscation Ordinance applied to Arthur Freund's policy. The second is a form letter from the Office charged with liquidating Jewish-owned assets

(*Vermögensverwertungsstelle*), dated 1 November 1943, to the Gestapo requesting confirmation that the confiscation Ordinance applied to Arthur Freund's assets so that they could move expeditiously to confiscation of his *Insurance Company* policy.

The CRT, after applying the relevant paragraphs of the Guidelines governing its recommendations with respect to insurance claims, determined that Arthur Freund's *Insurance Company* policy had indeed been surrendered and that there was no evidence that the policy holder had received the proceeds and that the current US dollar value of the surrendered policy amounted to US$ 10,050.64. In as much as this amount was below the average value of certain insurance policies, as set forth in the Guidelines, the CRT recommended that the award amount for the policy held by the Appellant's father be raised to the relevant average value, which in this case amounted to US$ 10,784.38.

**Issues in the Appeal**

In a letter, dated 16 April 2007 and received by the CRT on 27 April 2007, the Appellant asked for reconsideration of the amount that had been awarded for his father's life insurance policy. The Appellant asserted that the CRT's determination of the award amount was in error on two grounds:

> 1) the Appellant asserted that a mistake was made in awarding the US dollar counter value of the RM 2,864.45 reported by the *Insurance Company* on their registration form [col. 3b] rather than the GM 4,828.00 reported on the same form[col. 3a].
> The Appellant argued that the difference between these two amounts stems from an erroneous application of the conversion rate between the GM and the RM. In explaining his view the Appellant posited that
>
>> "this calculation done by the Nazis in 1940 is mistaken and was meant to decrease the Policy value"
>
> and that the proper official rate for the GM, as set in the Reich's 1935 law, was GM 1=RM 1. He concludes accordingly that
>
>> "the basis for the [award] calculation should be 4,828 RM."

and  2) the Appellant contended that, because his father bought his policy from a Swiss insurance company and the CRT is also based in Switzerland, any award should be calculated in Swiss francs ("SF") and that he wished to receive the award in SF. According to the Appellant

> "The official exchange rate between the RM and SF was 1.52 (see CRT decision in the account of Paul Friedmann, claim Nr. 601288/HS). So, the original value of the Policy in SF should be 4,828 RM multiplied by 1.52

2

which equals 7,338.56 SF.[1] This sum should then be multiplied by the factor of 12.5 which equals 91,732 SF. This is the sum I am expecting to receive."

**Consideration of the Appeal**

As set out above, the Appellant asserts that the CRT's award decision should have been based on the face value of his father's life insurance policy, numbered 241444, which, as reported to the Nazi authorities by the *Insurance Company* in their form letter of 9 July 1940, amounted to GM 4,828.00 (column 3a). The Appellant reached this conclusion by interpreting the amount of RM 2,864.45 (column 3b) reported by the *Insurance Company* in the same form letter as representing the conversion of the GM face amount into RM by using a manufactured exchange rate designed by the Reich's authorities to diminish the value of the asset.

The Appellant's interpretation, however, is in error. First, the amounts listed in the report form were provided by the *Insurance Company* not by the Reich's authorities. I note in this respect that the *Insurance Company*'s submission was made in response to an Ordinance requiring the registration of details of life insurance policies (and other assets) held by them in the names of non-residents, who where enemies of the Reich. I note that Arthur Freund, who at the time resided in Tel Aviv, Palestine, would have been subject to this Ordinance. Subsequently, when under the 11th Ordinance of 25 November 1941 all Jews who did not reside within the inner Reich, lost their German nationality and thereby all their assets within the Reich, the registration requirement was broadened to include all those who might fall under the earlier Ordinance. Some Swiss insurance companies, arguing that they could not determine who among their clients was Jewish, did not comply (or complied in ways that made the registration meaningless). The *Insurance Company,* however, was not one of these.[2] Thus, in the case of Arthur Freund, the *Insurance Company* in 1943 even reminded the head of the *Sicherheitspolizei* (the Security Police), which collected this information, that it held a policy in the name of Arthur Freund and asked whether this policy was subject to the 11th Ordinance. Though the documentation does not include a reply to this question, it is clear that the policy was confiscated, i.e. that the *Insurance Company* surrendered it to the Nazi authorities. However, as in all the cases where confiscation preceded the death of the policy holder, the *Insurance Company* would not have paid the face value of the policy to the Reich, but rather the cash surrender value of the policy as of the date of confiscation. In the same way, the *Insurance Company* provided in its 1940 report form both, the original value of the policy (GM 4,828.00) and the cash surrender value (RM 2,864.45) that had been accumulated by that date. Thus, the difference between the two reported amounts reflects the policy value to maturity (fully paid-up value) or value at death if that occurred before the policy was fully paid up, and the actual value at a given date before either of these

---

[1] I note that the official exchange rate between the RM and the SF in 1938 was in fact RM 1=SF 1.7485, which is the rate applied by the CRT in the award decision cited by the Appellant.
[2] See also Bergier Commission, vol 12, part 1, Karlen et al. *Schweizerische Versicherungsgesellschaften im Machtbereich des <<Dritten Reichs>>,* pp. 428-29.

3

events. This difference thus has nothing to do with any conversion of the GM into the RM, which indeed was at GM 1=RM 1 as stipulated in the 1935 law.

Given the above, the CRT was quite correct in using the amount of RM 2,864.45 as the basis on which the award amount for Arthur Freund's policy was calculated. However, the CRT did neglect to consider that the actual confiscation date, according to the documentation, appears to have been November 1943 or later. In its explanation of the Award Decision the CRT wrote on 30 January 2007

> " the available records indicate that the original known value in 1938 [of the policy] was 2,864.45 Reichsmark ("RM"). The CRT has applied the exchange rate of RM 1.00 equals .2807 United States Dollars ("US$")as described in the Guidelines and has determined the current value of that amount by multiplying the historic value by a factor of 12.5 in accordance with the practice for bank account claims, to achieve the amount of US$ 10,050.64."

The error in referring to the valuation date as in 1938 rather than the actual reporting date of 9 July 1940 is of no consequence in the CRT's calculation of the award amount. However, neglecting to consider the difference between the valuation date and the confiscation date is of relevance. The fact that the surrender of the policy was demanded at least 39 months after its cash surrender value was reported would make a difference if the premiums had continued to be paid up to the date of confiscation. Though there is no documentation on the payment of premiums following the Policyholder's emigration to Palestine in 1936, the fact that the *Insurance Company* in 1940 reported his full address in Tel Aviv indicates that the *Company* was in touch with him. Accordingly, it seems probable that premiums continued to be paid until the policy was surrendered to the Reich's authorities and that, therefore the actual cash surrender value that accrued to the Reich in 1943 was somewhat higher than that reported in July 1940.

As to the calculation of the policy's cash surrender value in 1943, the documentation does not include the issue date of the policy other than that the Appellant notes that it was issued at a time of concern about high inflation and financial turbulence. Nevertheless, it is possible to derive the issue date and the cash surrender value in November 1943 from data provided by a number of insurance companies to the International Commission on Holocaust Era Insurance Claims ("ICHEIC") in 1999. Information submitted by Allianz, the dominant German insurance company at the time, states that life insurance policies in the main were sold as savings instruments with an average term of twenty years. In the early part of the term, the cumulative amount of premiums paid would naturally exceed the cash surrender value of the policy as risk premiums and expenses swallowed up most of the premium. But, in the 12th year of the term, the cash value began to overtake the cumulative amount of paid premiums. In other words, in the 12th year, the cash surrender value reached 50 percent of the face value of the policy. After that, the cash value rose on an accelerating trend to reach full face value

4

in the twentieth year.[3] In the case of Arthur Freund, the documentation shows that by July 1940 his policy had reached a cash surrender value of 59.3 percent of its face value. According to the Allianz data, this means that the policy was in the 14th year of its twenty year term. Consequently, the issue date would have been in 1926, which accords with the Appellant's description that his father bought the policy with Germany's hyperinflation and the financial turbulence of the time in mind. The remaining term to fully paid-up status thus was 6 years. By late 1943, the policy would have been well into its 17th year and, according to the Allianz data, would have reached about 83 percent of its paid-up value. Consequently, the award amount should have been based on a policy cash surrender value of RM 4.007.24, which according to the Guidelines as re-affirmed by the Court, translates into a current US dollar amount of US$ 14,060.40. The award already received by the Appellant amounted to US$ 10,784.38, which leaves a difference yet to be paid of US$ 3,276.02.

It is further noted that the Guidelines under which the CRT treats insurance claims stipulate that in cases where the Policyholder survived the Holocaust, cash surrender values as of confiscation date (generally taken to be 1938) are to be awarded for looted policies. Accordingly, the only claim for which the CRT has recommended payment of the face value of a looted policy held by a Holocaust survivor was the case of a fully paid-up policy.

The second assertion of error addressed by the Claimant concerns the CRT's translation of the RM value of the policy into US dollars rather than into Swiss francs. The Claimant posited that if his father bought a policy from a Swiss company, he would have used the Swiss franc to anchor the policy's guaranteed value. Second, he argued that the fact that the CRT is based in Switzerland further supports his demand that the award be based on the policy's Swiss franc value. .

As to the Appellant's first point, the form filed by the *Insurance Company* shows very clearly that the anchor of the policy's value was the US dollar, which also is in accord with the general usage at the time. Consequently, the CRT was quite correct in using the translation into US dollars as the basis for calculating the award amount. The point regarding the CRT's location is of no relevance to the interpretation of the CRT's guidelines relating to the treatment of insurance policy claims. However, the Appellant may wish to note that in his case the application of the generous interpretation of the CRT's guidelines as approved by the Court, has been to his advantage. It is noted that the *Insurance Company* is not one of the Swiss insurance companies participating in the settlement process and that the Appellant's claim should have been treated by the German Foundation. It was only the refusal of the German Foundation to accept such claims from the CRT and the concern that Policyholders or their heirs not be disadvantaged as a consequence of bureaucratic problems that led the Court to allow these claims to be treated under the CRT's Guidelines. It further should be noted that

---

[3] ICHEIC, *Report On The Estimation Of Holocaust ERA Insurance Claims Which Have Been Unpaid And Uncompensated by the ICHEIC TASK Force Chaired by Glenn Pomeroy and Philippe Ferras,* December 1999, Annex E: Presentation by the Companies: Life Insurance in Germany 1928-1940, presentation by Allianz, pp. 2-3.

5

under the German Guidelines insurance claim awards, not the least because they were subject to the effects of the German currency reform, yielded considerably lower awards than claims treated by the CRT.

**Recommendation**

In view of the above, I find that the CRT was correct in using the policy value of RM 2,864.45 as the basis for calculating the award amount, but that it was in error in not considering the lapse of time between the valuation date of the policy and its probable surrender date. I consequently recommend that the Appellant be awarded an additional US$ 3,276.02.

With respect to the Appellant's contention that the award amount should have been calculated on basis the policy's Swiss franc value, I find that the CRT was correct in translating the RM value of the policy into US dollars and that the Appellant's contention has no basis in fact.

Respectfully yours

Helen B. Junz

Approved:

The Honorable Edward R. Korman
United States District Judge
United States District Court
 for the Eastern District of New York

6