UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
IN RE: HOLOCAUST VICTIM ASSETS                                :   Case No. CV 96-4849 (ERK)(MDG)
LITIGATION                                                    :   (Consolidated with CV 96-5161
                                                              :   and CV 97-461)
                                                              :
-------------------------------------------------------------  :
                                                              :
                                                              :   MEMORANDUM & ORDER
This Document Relates to: All Cases                           :   FILED
                                                              :   IN CLERK'S OFFICE
                                                              :   US DISTRICT COURT E.D.N.Y.
                                                              :
                                                              :   ★ MAR 1 6 2012 ★
------------------------------------------------------------- X
                                                                  BROOKLYN OFFICE

KORMAN, Judge:

I have before me an appeal from the Claims Resolution Tribunal's (hereinafter "CRT") decision in *In re Holocaust Victim Assets Litigation, Case No. CV96-4849 (In re Accounts of Siegfried Levy, Sigfried Levy, Paula Levi, and Schuhkonzern Aktiengesellschaft Zürich)* (the "Decision"). The Decision, which was approved by this Court on December 27, 2011, was issued to claimants ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ the latter three of whom are represented by the law firm of von Trott zu Solz Lammek. Dr. Imke Gielen of that law firm filed an appeal on behalf of that firm's clients (the "Appellants") regarding the denial to the accounts held by *Schuhkonzern Aktiengesellschaft Zürich* ("*Schuhkonzern*"), specifically with regard to a custody account numbered 26252 that held common shares of *Luwal AG* worth 590,000.00 Reichsmark ("RM") (nominal value) and a demand deposit account, also numbered 26252, that had been established to receive any dividend payments due on the shares.

The grounds for the denial are summarized, as follows, in the last four paragraphs of the Decision:

The CRT notes that in his 19 December 1936 asset report, Siegfried Levi valued his shares of *Schuhkonzern* at RM 215,000.00, and explained that *Schuhkonzern* was a holding company which held *Luwal* common shares worth RM 590,000.00. In this report, Levi also noted that *Schuhkonzern* also held shares of the company *Titania AG* in Budapest, but that this company had been in liquidation since 1931, so that he considered these assets to be without value. As detailed above, in the declaration of assets dated 27 October 1937, Schweizer [an attorney acting for *Schuhkonzern* in Zurich] included the *Schuhkonzern* shares in a list of securities owned by Levi. Schweizer stated that the shares had no value, that the only assets held by the firm were the *Luwal* common shares with a nominal value of RM 590,000.00, and that these shares were pledged as security to the Bank for a debt in the amount of approximately SF 42,000.00 owed to the Bank by *Schuhkonzern*. Schweizer noted that upon payment of this debt, *Schuhkonzern* agreed to transfer the shares to an account at a German bank in the name of Siegfried Levi. As noted above, according to a report dated 25 March 1938 of the *Luwal* board, these shares had been delivered to an account at the *Deutsche Bank und Diskonto-Gesellschaft* in Stuttgart. The CRT therefore concludes that the *Luwal* shares, which comprised the sole asset of value in the account, were transferred to an account in Germany in the name of Siegfried Levi, and the account, along with the related demand deposit account, was subsequently closed.

With regard to the value of the *Luwal* shares and the value of any dividends that may have accumulated in the demand deposit account, the CRT notes that after the War, Siegfried Levi and his heirs pursued numerous claims to reclaim the value of *Luwal*. As detailed in the 1998 Partial Decision, the aryanizers "purchased" the shares for RM 240,000.00, or 40 percent of the total RM 600,000.00 nominal value of the shares. In 1953, Siegfried Levi received a total of DM 30,000.00, which represented the *Reichsmark* equivalent of RM 300,000.00. The 1998 Partial Decision noted that in 1976, the Stuttgart Compensation Office held that Levi had suffered damages in the amount of RM 1,290,000.00 through the forced sale of *Luwal*, and that he had already received DM 30,000.00 (RM 300,000.00) in 1953 as compensation for these damages.

As noted above, the 1998 Partial Decision formed the basis for seven additional payments to the Claims Conference issued as compensation for the loss of *Luwal*. These payments totaled € 2,578,117.22, of which the Cassel Claimants received € 2,039,234.03. [Footnote explaining that the € 2,578,117.22

amount received by the Claims Conference with regard to its claim for *Luwal* was equal to DM 5,042,359.00 omitted.] The CRT notes that *Landesamt* in Brandenburg, which issued the 1998 Partial Decision, carefully reviewed the history of *Luwal*, and that the subsequent payments covered both real estate and other assets owned by the company. The CRT also notes that the *Luwal* shares that had been in custody account 26252 at the Bank did not have any intrinsic value, but rather represented the value of the company. Given that the value of the company was extensively reviewed and considered by the *Landesamt* in reaching its decision, and that payments totaling € 2,578,117.22 – in addition to the payments equaling RM 540,000.00 previously received by Levi – were made as compensation for the losses associated with the aryanization of *Luwal*, the CRT concludes that Siegfried Levi and/or his heirs were fully compensated for the value of the *Luwal* shares, as well as any dividends that might have accumulated. Therefore, no additional award is appropriate.

With regard to all three accounts, the CRT notes in all the claims for restitution and compensation filed after the War by Siegfried Levi and his heirs, no claim was made for any other assets held by *Schuhkonzern*. This strongly supports the conclusion that the *Schuhkonzern* accounts at the Bank did not contain any assets other than the *Luwal* shares, the value of which were fully restituted to Siegfried Levi's heirs. Accordingly, and given the considerations listed above, no award is appropriate in this case.

The denial of the claims to the accounts belonging to *Schuhkonzern* was clearly correct and in accord with CRT precedent. The two letters filed in support of the appeal contain no plausible suggestion of error, as required by the CRT rules. Consequently, the appeal is subject to summary denial.

I add these brief words about the grounds for appeal that are specifically mentioned in the two appeal letters, namely, that the CRT did not consider the findings of the *Landesamt* that the *Schuhkonzern* shares were transferred to a blocked account, and therefore confiscated by Nazi authorities; and that the CRT did not consider the dividends that accrued on the *Schuhkonzern* shares and that were then deposited in the claimed demand deposit account. The Appellants also

claim that the CRT wrongfully stated that they were fully compensated because the Claims Conference was awarded € 2,578,117.22, but they received € 2,039,234.03, so that the Claims Conference "kept an amount of 538,883.19 Euro for itself." Letter of Dr. Imke Gielen to the Court, dated January 20, 2012. Finally, the Appellants assert that "there is no rule in the Governing Rules pertaining that claims against Swiss banks have to be rejected because claimants sought for (and received) compensation from the German Government [*sic*]. Especially as payments made by the German Government do not extend to lost Swiss bank accounts and the claimants were not fully compensated for *Luwal* in Germany." *Id.* [Emphasis in the original.]

With regard to the Appellants' assertion that the CRT failed to consider that the *Luwal* shares were transferred to a blocked account, I note that the Decision clearly acknowledges that the *Luwal* shares held in the custody account belonging to *Schuhkonzern* were confiscated by the Nazis. In denying the claim, the CRT nevertheless determined that no award was appropriate because the value of the assets in the accounts was restituted to the account owner or his heirs after the War. Thus, the Decision cited the 1998 Partial Decision and noted that in 1976, the Stuttgart Compensation Office had determined that the value of the *Luwal* shares was RM 1,290,000.00. The 1998 Partial Decision noted that Levi received RM 240,000.00 from the "aryanizers," and that in 1953 he received 30,000.00 Deutschmark ("DM"), which, at the conversion rate of DM 1.00 = RM 10.00, was the equivalent of RM 300,000.00. Thus, prior to the 1998 Partial Decision, Levi had received RM 540,000.00 for the value of the *Luwal* shares, which in 1976 was determined to be RM 1,290,000.00, leaving a non-restituted amount of RM 750,000.00. The Decision noted that, on the basis of the 1998 Partial Decision, seven payments totaling € 2,578,117.12 were issued as compensation for the loss of *Luwal*. The decision noted

that this amount was equal to DM 5,042,359.00. At the same DM 1.00 = RM 10.00 conversion rate, this amount was the equivalent of RM 50,423,590.00. Thus, it is clear that the amount of restitution received based upon the 1998 Partial Decision (€ 2,578,117.12, equal to RM 50,423,590.00) exceeded the value of the *Luwal* shares not previously paid or restituted to Siegfried Levi, as determined by the Stuttgart Compensation Office in 1976 (RM 750,000.00).

With regard to the Appellants' assertion that the CRT did not consider the dividends that accrued to the demand deposit account, I note that in an appeal letter dated March 2, 2012, the Appellants submitted a copy of the business report for *Luwal* for the year 1936-37, dated July 21, 1937, which states in translation: "It is suggested to pay a dividend in the amount of 5% from the profit in the amount of RM 80,825.46, from RM 600,000.00 share capital – RM 30,000.00 to the shareholders and to carry forward the remaining amount of RM 50,825.46 on to a new account." Letter of Dr. Imke Gielen to the Court, dated March 2, 2012. Appellants argue that if *Luwal*'s dividend payments were transferred to its shareholders *Shuhkonzern* and Siegfried Levi via the demand deposit account numbered 26252, then they are entitled to a compensation for these funds.

I note, however, that the Decision clearly refers to any such dividends when concluding that Siegfried Levi and/or his heirs were fully compensated:

> Given that the value of the company was extensively reviewed and considered by the *Landesamt* in reaching its decision, and that payments totaling € 2,578,117.22 – in addition to the payments equaling RM 540,000.00 previously received by Levi – were made as compensation for the losses associated with the aryanization of *Luwal*, the CRT concludes that Siegfried Levi and/or his heirs were fully compensated for the value of the *Luwal* shares, <u>as well as any dividends that might have accumulated</u>.

Decision, page 11. [Emphasis added.] I also note here that, unlike the case for the *Luwal* shares in the custody account, there is no evidence that the dividends that were distributed were ever repatriated to the Reich and confiscated by Nazi authorities.

The Appellants also claim that the CRT wrongfully stated that they were fully compensated because the Claims Conference was awarded € 2,578,117.22, but they received € 2,039,234.03, so that the Claims Conference "kept an amount of 538,883.19 Euro for itself." The Decision clearly explained why the full amount received by the Claims Conference as compensation for the *Luwal* assets was not transferred to the Appellants:

> Following the reunification of Germany in 1990, laws were enacted for the restitution of property that had been nationalized in the former East Germany. After the expiration of claim filing deadlines in Germany on 31 December 1992 for real estate and 30 June 1993 for movable property, the Claims Conference became the legal successor to unclaimed Jewish assets in the former East Germany. Under the Claims Conference's Goodwill Fund, established in 1994, former Jewish owners and their heirs who had missed the German deadlines could apply for the proceeds of restituted properties or compensation payments that the German restitution authorities had awarded to the Claims Conference, minus a fee for services. Under this scheme, eligible applicants such as the Cassel Claimants [the Appellants] received approximately 80 percent of any amount awarded to the Claims Conference.

Decision, page 4, note 11. Thus, the "deduction" in the amount of € 538,883.19 was a fee for services rendered by the Claims Conference -- without which the Appellants would have had no claim to German restitution at all. After reunification, the "Claims Conference 'conducted a massive research effort to identify all possible Jewish properties,' because in the event that no claim was submitted, 'these Jewish assets would have otherwise remained with either the 'aryanizer' or the successor government to the Third Reich.'" *See Plan of Allocation and Distribution of Settlement Proceeds, Vol. II, at E-70*. The Claims Conference filed over 81,000

claims; most property subsequently was claimed by the former owners or heirs, but "those who did not meet the deadline had no legal recourse against Germany. Although the 1990 legislation did not obligate the Claims Conference to consider such late claims, in 1994, the Claims Conference established a 'Goodwill Fund' to share certain of the proceeds from property sales with late-filing heirs." *Id.* The proceeds not paid directly to the heirs "have been utilized mostly to fund relief programs for needy elderly Jewish Nazi victims around the world," *id.*, the same programs supported by this settlement through the *cy pres* remedy adopted on behalf of the Looted Assets Class.

The fact that the restitution was initiated by and ultimately shared with the Claims Conference does not alter the fact that, based upon the 1998 Partial Decision, a total of € 2,578,117.22 was restituted based upon the Appellants' claim to *Luwal* assets.

Finally, the Appellants assert that their claim should not be rejected simply because they sought and received compensation for their family's losses in Germany. This argument is frivolous and disingenuous. In all cases in which an award recommendation is made, the CRT considers the issue of who received the proceeds of the claimed accounts. If an account owner received the full proceeds of a claimed account, either at the time of the account closing or later during restitution proceedings, the CRT has concluded that no award is appropriate. *See In re Account of Eduard Schwarzschild* (approved on 13 February 2009) (finding that payments received from the German government in 1962 fully restituted the value of the account owner's assets that had been deposited in Switzerland). If partial restitution was received, this amount has been deducted from the total amount awarded. *See, e.g., In re Accounts of Erwin and Babette Koblitz* (approved on 29 May 2007); *In re Accounts of Sara (Särle) Levi, Martha Baldauf, and Isle Lebrecht* (two awards approved on 25 October 2004 and 30 December 2004,

award amount amended on 19 January 2010); *In re Account of Gamliel Appel* (approved on 26 November 2008); and *In re Assets of Gertrude Löw and Marianne Hamburger-Löw* (approved on 21 December 2009). In each of these cases, documented amounts of partial restitution received were deducted from the final award amounts. In the present case, the restitution previously received fully compensated the Appellants for the *Luwal* shares and any dividends that may have accrued. Accordingly, as the Decision properly concluded, no further award is appropriate.

For the foregoing reasons, it is impossible to conclude that the issues raised on appeal constitute a plausible suggestion of error. The appeal is denied.

**SO ORDERED.**

Brooklyn, New York
March 15, 2012

                                                          s/Edward R. Korman
                                                          Edward R. Korman
                                                          Senior United States District Judge