UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

Jacob Friedman, Estelle Sapir and Miriam Stern, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

– against –

Union Bank of Switzerland, et al.,

Defendants.

**MEMORANDUM & ORDER**

96-cv-4849 (ERK) (JO)

KORMAN, *J.*:

## BACKGROUND

Nearly three decades ago, I approved a global settlement to resolve a series of class action lawsuits filed against Swiss banks, including Credit Suisse AG ("Credit Suisse"), by victims of Nazi persecution and their families (the "Settlement Agreement" or "Agreement"). The Settlement Agreement addressed allegations that the banks and their predecessor institutions collaborated with the Nazi regime by refusing to return assets belonging to victims of Nazi persecution, processing assets looted from victims of Nazi persecution, and profiting from the use of slave labor. *See* ECF No. 5093-1 at 1–2. As part of the settlement process, the settling plaintiffs were required to obtain the written endorsement of seventeen Jewish organizations ("Organizational Endorsement"). *See* ECF No. 5093 at 3; ECF No. 5093-2 at 2. The

Simon Wiesenthal Center ("SWC") was among the signatories to the Organizational Endorsement, which included, among other terms, provisions "not to make any public statement or take any action that would violate or be inconsistent with this endorsement" and "not to sue, call for suits against, or support suits against any Swiss entity released by the Settlement Agreement based on conduct covered by the settlement." *See* ECF No. 5093-2 at 2.

The Settlement Agreement became final on March 30, 1999, and I entered a Final Order and Judgment granting final approval to the Agreement on August 9, 2000. *In re Holocaust Victim Assets Litig.*, No. 96-cv-4849, 2000 U.S. Dist. LEXIS 15644 (E.D.N.Y. Aug. 9, 2020). In so doing, I retained "continuing jurisdiction" over "all parties to this action and the plaintiff class members for the purpose of enforcing and administering the settlement." *Id.* at *3–4.

In March 2023, Credit Suisse sought this Court's assistance to help address "recent actions" that SWC "ha[d] taken and appear[ed] to be contemplating" that were "inconsistent with [SWC's] obligations under the Settlement." ECF No. 5092 at 25; *see also* ECF No. 5092 at 37. Credit Suisse's request related to allegations by SWC that Credit Suisse had "concealed Nazi assets and related information not only after World War II, but before and after the litigation *In re Holocaust Victim Assets Lit.*, 105 F.Supp.2d 139 (E.D.N.Y. 2000)." ECF No. 5093-5 at 2. Statements from SWC suggested that the 1999 Settlement Agreement had not accounted for these

new allegations, and SWC also seemingly instigated a congressional subpoena on the subject. *See* ECF No. 5093 at 5.

My chambers advised Credit Suisse and SWC that I did not intend to hold a status conference regarding Credit Suisse's concerns because they "[did] not relate to a live case pending before [me]." *See* ECF No. 5092 at 15. Nevertheless, on May 22, 2023, Credit Suisse submitted another letter requesting the Court's intervention, this time asking that I appoint a neutral mediator as "a productive way to address the current situation in a cooperative manner envisioned by the 1999 Settlement." ECF No. 5092 at 42.

The May 22, 2023, letter—like Credit Suisse's two prior letters—invoked this Court's continuing jurisdiction to enforce the Settlement Agreement, *see id.* at 42 n.1, and at that point I opted to treat Credit Suisse's latest communication as a motion to enforce the Settlement Agreement and "open[ed] the case for the purpose of considering Credit Suisse's application," Text Order of June 16, 2023, ECF No. 5083. I also indicated in my text order that I was willing to appoint a mediator and invited Credit Suisse and SWC to respond. *See id.* Though SWC argued in response that the parties' disagreement was unrelated to the 1999 Settlement Agreement and thus was not properly before this Court,[1] I found there was indeed a dispute

---

[1]  SWC maintained that the parties' dispute stemmed from a separate agreement between SWC and Credit Suisse to cooperate on an independent investigation into the allegations, first raised by SWC in 2020, of undisclosed

"regarding [SWC's] obligations under a long-existing agreement," *i.e.*, the Settlement Agreement. *See* Text Order of Aug. 11, 2023. I appointed Ambassador Stuart Eizenstat and Mark Doing to serve as mediators. *Id.*; Text Order of Sep. 3, 2024.

For over two years, the mediators worked with SWC and UBS AG ("UBS") (which had acquired Credit Suisse) in an effort to reach an amicable resolution and avoid unnecessary litigation. On January 28, 2026, however, UBS reported to the Court that mediation had "reached an impasse without any likelihood of a resolution." ECF No. 5086 at 1. UBS therefore now seeks this Court's involvement but has revised its aims: UBS's January 28, 2026, letter states that it "does not seek enforcement of the Settlement Agreement against any party" and "[i]nstead . . . respectfully requests that the Court enter an order clarifying the scope of the Settlement and the obligations of the parties." *Id.* at 2. UBS attached a proposed order that would affirm that the 1999 Settlement Agreement encompassed any claims relating to Nazi-linked assets and that the parties and Organizational Endorsers to the Settlement Agreement were barred by its terms from pursuing legal action against the defendants, promoting public controversy, or demanding or requesting additional financial payment. *See* ECF No. 5086-1 at 1–2.

---

information about Nazi assets at Swiss banks. *See* Text Order of Aug. 11, 2023. I found that no such agreement had been created. *See id.*

SWC opposed UBS's request for a ruling, arguing that UBS seeks an improper advisory opinion and that the bank's proposed order would inappropriately modify and expand the Settlement Agreement. *See generally* ECF No. 5092; ECF No. 5094. The parties presented their respective positions during a hearing held on March 10, 2026.

**DISCUSSION**

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. Thus, I first must ensure that there is a justiciable matter before me. "The oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 85 (2d Cir. 2018) (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968)). This means federal courts cannot "advis[e] what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). Instead, Article III's case-or-controversy condition "require[s] that a case embody a genuine, live dispute between adverse parties." *Carney v. Adams*, 592 U.S. 53, 58 (2020); *see also In re Motors Liquidation Co.*, 829 F.3d 135, 167–68 (2d Cir. 2016).

UBS seeks a classic advisory opinion concerning hypothetical events and events that are not before me. While UBS and SWC previously had a live dispute by virtue of a motion to enforce the Settlement Agreement, UBS has since stated it does not wish to pursue that motion. In addition, SWC's alleged threats of litigation

5

would be relevant to the question of justiciability if UBS were bringing an action or claim against SWC, but UBS is not doing so. *See, e.g.*, *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011) (threat of future litigation by other party "relevant in determining whether an actual controversy exists" for claims for declaratory judgment); *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 151 F. Supp. 3d 451, 457 (S.D.N.Y. 2015) (justiciable controversy where plaintiff sued defendant on basis of letter from defendant that was "clearly a threat of future litigation"). UBS wants to use its disagreement with SWC to assert there is a case or controversy, without actually filing any motion or lawsuit with an adversarial posture. Under Article III, UBS cannot have it both ways.

That UBS frames its motion as a request for clarification does not change the analysis. Presuming such a motion falls within my retained jurisdiction over the Settlement Agreement, it would not obviate the need for a justiciable dispute. *See, e.g.*, *Mears v. Montgomery*, No. 2-cv-407, 2013 WL 69221, at \*2–3 (S.D.N.Y. Jan. 4, 2013) (motion for clarification of injunction denied where there was not yet an alleged violation), *aff'd,* 566 F. App'x 17 (2d Cir. 2014); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345, 2018 WL 3104453, at \*2 (S.D.N.Y. May 29, 2018) (motion for clarification of attachment order denied where there was not yet an alleged breach), *R. & R. adopted*, 2018 WL 3093961 (S.D.N.Y. 2018); *see also Bank of New York Mellon, London Branch v. Cart 1, Ltd.*, No. 18-cv-6093, 2021 WL 2358695, at \*1 (S.D.N.Y. June 9, 2021) (motion for clarification granted to inform

"status of [the parties'] claims against one another" in ongoing litigation). UBS wants the Court to say what the Settlement Agreement means so that UBS can (1) anticipate what would happen if an entity like SWC were to bring a future suit against the bank; and (2) curb what it perceives as violations of the Settlement Agreement even though it is not advancing any motion to enforce the Agreement. Because UBS's request plainly calls for an advisory ruling, there is no basis for subject matter jurisdiction and UBS's motion must fail.

There is little doubt that UBS and SWC have been at odds with one another in recent years. Yet "[t]he presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself" to create a case or controversy. *Diamond v. Charles*, 476 U.S. 54, 62 (1986). UBS may well believe that it would benefit from a court's analysis of the 1999 Settlement Agreement—but unless and until a genuine case or controversy arises that requires judicial interpretation of its terms, the Agreement will continue to speak for itself.

## CONCLUSION

UBS's request for a ruling clarifying the scope of the Settlement Agreement and its release of claims is **DENIED**. Moreover, in light of UBS's position that it does not seek to enforce the Settlement Agreement against SWC, UBS's pending motion to enforce the Settlement Agreement is **DENIED** as moot. I express my utmost appreciation to the mediators for their diligent attempts to resolve the issues underlying the motion to enforce the Settlement Agreement.

To the extent I re-opened this case to consider UBS's motion to enforce the Settlement Agreement, I now again close the case.

**SO ORDERED.**

Brooklyn, New York
April 7, 2026

 Edward R. Korman 
Edward R. Korman
Senior United States District Judge